UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TAMERLANE VANHORN, and<br>BRIAN VANHORN,<br><br>    Plaintiffs,<br><br>    v.<br><br>PROGRESSIVE INSURANCE<br>COMPANY,<br><br>    Defendant. | CAUSE NO.: 1:06-CV-160-TS |

**OPINION AND ORDER**

**A.   Background**

Plaintiff Tamerlane Vanhorn worked as a claims adjuster for the Defendant, Progressive Insurance Company. On March 31, 2004, she was involved in a car accident while driving to work. Shortly before the accident, at the request of a coworker, she drove to a K-Mart parking lot to inspect a customer's car. Getting there involved only a minor detour from her regular commute route. The customer did not show up, and she resumed her course. The accident occurred at a place along her usual commute.

Following the accident, the Plaintiff sought to recover damages under the Defendant's underinsured motorist (UIM) policy. The Defendant refused to pay, stating that her accident occurred outside the scope of her employment and that, in any case, the UIM liability was limited to $50,000, which was reduced to $0 by the payments she received from other sources. The Plaintiff maintains that the accident occurred within the scope of her employment and that the UIM liability is $1,000,000. The Defendant requests summary judgment as to all of the Plaintiff's claims. In turn, the Plaintiff asks for partial summary judgment in her favor.

**B.      Summary Judgment Standard**

Summary judgment is only appropriate by the terms of Rule 56(c) where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. This notion applies equally where, as here, opposing parties each move for summary judgment in their favor. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, In*s., 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp*., 154 F.3d 685, 692 (7th Cir. 1998)). Mindful of these standards, the court now turns to the factual basis for the parties' motions and then to their substance.

**C.      Facts**

The parties agree on the facts.

The Plaintiff worked for the Defendant at its Fort Wayne office as a claims adjuster. She spent about 60% of her time away from the office, fielding claims and meeting appointments throughout Adams, Allen, and DeKalb counties. If the appointments were scheduled around

midday, she used the Defendant's cars to get there; if they were scheduled in the morning or evening, she used her own car, and the Defendant would reimburse her for mileage. Her regular work hours were from 10 a.m. until 7 p.m., but this varied.

The Plaintiff lived south of Fort Wayne, in Decatur.

The Plaintiff's coworker, Bill Kivi, was scheduled to inspect a claimant's car at the parking lot of Decatur's K-Mart, on March 31, 2004, at 7 a.m. He asked if the Plaintiff could cover this appointment because it was close to her home. The Plaintiff agreed as she often inspected customers' cars in the Decatur area on behalf of other employees so that they would not have to travel out of their way.

That morning, the Plaintiff went from her home to the K-Mart parking lot at the arranged time. Going to this place required a minor detour from her usual commute route. The claimant did not arrive, and the Plaintiff continued on her way to work. She resumed her regular course and, ten to fifteen minutes later, struck a car that pulled out from a side road in front of her. The collision caused her car to go off the road and hit a telephone pole.

The other driver had a liability insurance policy with a $50,000 limit. The Plaintiff settled with the driver for that amount and released him from further liability. The Plaintiff also received $55,000 from her own insurance company: $50,000 in UIM coverage[1] and $5,000 in medical payments. In addition to insurance proceeds, she received $145,096.12 in workers' compensation benefits from Met Life, which also paid an undisclosed amount for the Plaintiff's disability.

At the time of the accident, the Defendant carried an insurance policy No. CA 04130707-

---

[1] Plaintiff's total UIM coverage was up to $100,000.

2 that included a UIM coverage for all employees injured in an automobile accident during the course and scope of their employment with the Defendant. The Declaration Page stated, among other things, the amounts for bodily injury liability ($1,000,000) and uninsured motorist coverage ($1,000,000). (DE 12-4; Declaration Page.) The policy also contained a General Change Endorsement which read:

> It is the intent of the parties to this contract that employees of the Named Insured are to be provided with Uninsured Motorist Coverage and/or Underinsured Motorist Coverage only where the coverage/s have not been rejected and only to minimum coverage limits required by the state laws in which the covered autos are registered, licensed or principally garaged and only when the employee of the Named Insured is either:
> a.  occupying an auto that is owned by or leased to the Named Insured; or
> b.  occupying an auto while in the course and scope of their employment with the Named Insured.
>
> . . .
>
> There is no intent to provide employees with Uninsured Motorist Coverage and/or Underinsured Motorist Coverage on an excess or primary basis while they are occupying any other motor vehicle of any type when acting outside the course and scope of their employment with the Named Insured.
>
> . . .
>
> This endorsement changes Policy No. CA 0 4130707-2

(DE 12-4; General Change Endorsement.)

### D.    Principles of Insurance Contract Interpretation

In deciding to what insurance coverage, if any, the Plaintiff is entitled, the Court must apply Indiana law for contract interpretation. *Allstate Ins. Co. v. Keca*, 368 F.3d 793, 796 (7th Cir. 2004) ("A federal court sitting in diversity has the obligation to apply the law of the state as it believes the highest court of the state would apply it if presented with the issue.").

Generally, the interpretation of an insurance policy presents a question of law and

4

> is thus appropriate for summary judgment. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997). A contract for insurance "is subject to the same rules of interpretation as are other contracts." *USA Life One Ins. Co. of Indiana v. Nuckolls*, 682 N.E.2d 534, 537–38 (Ind. 1997). If the language in the insurance policy is clear and unambiguous, then it should be given its plain and ordinary meaning, but if the language is ambiguous, the insurance contract should be strictly construed against the insurance company.

*Morris v. Economy Fire and Cas. Co.*, 848 N.E.2d 663, 665–66 (Ind. 2006).

> "This is especially true where the policy language in question concerns an exclusion clause." When an insurance company fails to clearly exclude "that which the insured attempted to protect against, we must construe the ambiguous policy to further the policy's basic purpose of indemnity." A policy is ambiguous only if it is "susceptible to more than one interpretation and reasonably intelligent persons would differ as to its meaning."

*Matteson v. Citizens Ins. Co of Am.*, 844 N.E.2d 188, 192 (Ind. Ct. App. 2006) (quoting *USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 538 (Ind. 1997)).

**E.     Discussion**

The parties disagree whether the Plaintiff has any valid claims to the Defendant's UIM coverage. Setting aside for a moment the policy's Declaration Page, the UIM provision described in the Endorsement can be summed up in this sentence: if the employer has not rejected the UIM coverage, its employees will be protected against underinsured motorists up to the minimum amount required by Indiana law, so long as the employee suffers an accident while occupying a car in the course and scope of his employment. (DE 12-4; Declaration Page.) Therefore, to determine whether the parties can prevail on their motions for summary judgment, three questions must be answered: (1) At the time of the accident, was the Plaintiff occupying her car in the course and scope of her employment? (2) Did the Defendant, as the insured, reject the UIM coverage? (3) If not, what is the minimum amount of undersinsured motorist coverage

the Plaintiff is entitled to?

**(1)**   *Scope of Employment*

The Plaintiff maintains that, at the time of the accident, she was already on the job and her driving constituted a service for her employer, the Defendant. She insists that the Defendant is collaterally estopped from arguing that she was not acting within the scope of her employment because it has conceded otherwise during the workers' compensation proceedings. The Defendant responds that its earlier concession is not controlling because it occurred within the context of workers' compensation claim, which is reviewed under a more lenient standard than contract claims. The Defendant maintains that, when the collision occurred, the Plaintiff was merely commuting to work as all work related activity had concluded once she left the K-Mart parking lot and she continued on her regular route to work, at her usual time. According to the Defendant, the Court must apply the general rule "that an employee is not within the scope of his employment when commuting to or from his job." *Konradi v. United States*, 919 F.2d 1207, 1209 (7th Cir. 1990).

The Court has considered the parties' arguments regarding the collateral estoppel but finds them extraneous as the facts establish that, in any event, the Plaintiff was acting in the course and scope of her employment at the time of the accident. An employee is acting within the scope of her employment when she is at the service of her employer. *See Am. Family Mutual Ins. Co. v. Lane*, 782 F. Supp. 415, 420 (S.D. Ind. 1991). However, her service to the employer does not have to be exclusive:

> An act may be within the scope of employment although done in part to serve the purposes of the servant. The fact that the predominant motive of the servant is to

6

>benefit himself does not necessarily prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service.

*Great Am. Tea Co. v. Van Buren*, 33 N.E.2d 580, 581–82 (Ind. 1941). Thus, in determining the scope of employment, the main question is whether the employee's conduct was actuated to any appreciable extent by the service to the employer's business. *Cf. Gibbs v. Miller*, 283 N.E.2d 592, 594 (Ind. Ct. App. 1972) ("[T]he determination of whether an employee is acting within the scope of his employment at the time of an accident is a factual determination to be made in light of the facts and circumstances peculiar to each case."). As it applies to this case, the Court must inquire whether the Plaintiff's driving on the fateful morning was actuated to any appreciable extent by her service to the Defendant.

The answer is yes. Meeting the Defendant's clients away from its office was part of the Plaintiff's job. She spent 60% of her work time outside the office assessing customers' claims. During that 60% of time, the Plaintiff was at work even though she was not at the office. Therefore, when, at the request of one of the Defendant's employees the Plaintiff set out to meet a customer at the K-Mart parking lot, she was beginning her work day, beginning to serve the Defendant. Her acquiescence to the request saved time and expense for the company because other employees did not have to make a round trip from the office to Decatur. Rather, the trip was cut in half since the Plaintiff was already in Decatur.

That the Plaintiff had to drive her usual route to the office once the customer did not show up is of little importance: not the route but the purpose of being on the road determines the Plaintiff's status. In this case, the Plaintiff was driving because her workday started with an early morning appointment at the K-Mart parking lot and she continued to the office as her work

duties required. The Court is satisfied that the facts sufficiently show that the Plaintiff's driving at the time of the accident was actuated by her service to the Defendant. Therefore, she was covered by the Defendant's UIM policy.

**(2)**   *Minimum Coverage Limits*

Having decided that the Plaintiff was covered by the Defendant's insurance, the Court must determine the amount of the UIM coverage available to her. As it relates to the UIM coverage, Indiana Code § 27-7-5-2(a)(2) is on point:

> The uninsured and underinsured motorist coverages must be provided by insurers for either a single premium or for separate premiums, in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured. However, underinsured motorist coverage must be made available in limits of not less than fifty thousand dollars ($50,000). At the insurer's option, the bodily injury liability provisions of the insured's policy may be required to be equal to the insured's underinsured motorist coverage. Insurers may not sell or provide underinsured motorist coverage in an amount less than fifty thousand dollars ($50,000).

*Id*.

The statute explicitly states that the UIM coverage must at least equal the limits of bodily injury liability of an insured's policy, unless the insured rejects such coverage in writing. But the UIM coverage is not an all-or-nothing proposition: the insured may reject the coverage that equals the bodily injury liability and may agree to be insured for less. *See Marshall v. Universal Underwriters Ins. Co.*, 673 N.E.2d 513, 516, 517 (Ind. Ct. App. 1996) (finding that identical language in the earlier statute allowed the insured to waive the UIM coverage completely or be covered for less than the bodily injury liability amount). However, if the insured chooses to have any UIM coverage, it cannot be for less than $50,000, *see* § 27-7-5-2(a)(2) ("Insurers may not

8

sell or provide underinsured motorist coverage in an amount less than fifty thousand dollars ($50,000)."), even though Indiana allows bodily injury limits to be as low as $25,000, *see* Ind. Code 9-25-4-5 ("[T]he minimum amounts of financial responsibility are as follows: (1) . . . twenty-five thousand dollars ($25,000) for bodily injury to or the death of one (1) individual.").

Hence, where the insured chooses to have UIM coverage, § 27-7-5-2(a)(2) sets out two minimum coverage amounts. The first minimum applies where the insured has not rejected in writing the amount of coverage that must be "in limits at least equal to the limits of liability specified in the bodily injury liability provisions." § 27-7-5-2(a)(2) In that case, the minimum coverage amount is the bodily injury amount. The second minimum applies where the insured rejects in writing UIM coverage equal to the bodily injury coverage. In that case, the minimum coverage amount is $50,000.

The Plaintiff argues that the Defendant, as the insured, did not reject the UIM coverage, completely or partially, and as a result she was covered for $1,000,000 at the time of the accident. She insists that this is apparent from the plain language of the Endorsement and from the fact that Column I of the declaration sheet—entitled "Uninsured Motorist"—contains a $1,000,000 figure. The Defendant disagrees and maintains that the General Change Endorsement "clearly and unambiguously reduced" the coverage from $1,000,000 to $50,000. (Def. Resp. Br. 10; DE 12.) It submits that the endorsement does not in any way contradict Column I of the declaration page because the Endorsement is meant to modify Column I. The Defendant does not suggest that there exists any other document indicating the rejection or reduction of the UIM coverage.

On its face, the Endorsement states that the insurer will be provided the UIM coverage

only if such coverage has not been rejected, and only to minimum coverage limits required by Indiana:

> It is the intent of the parties to this contract that employees of the Named Insured are to be provided with . . . Underinsured Motorist Coverage only where the coverage[] [has] not been rejected and only to minimum coverage limits required by the state laws in which the covered autos are registered, licensed or principally garaged.

(General Change Endorsement; DE 12-4.)

The phrase "only where the coverage has not been rejected" refers to a complete rejection of the UIM coverage. The parties agree that the UIM coverage has not been rejected. They disagree on the meaning of "and only to minimum coverage limits required by the state law." The Plaintiff insists that this phrase refers to the statutory minimum where the insured has not rejected in writing the amount of coverage that must be "in limits at least equal to the limits of liability specified in the bodily injury liability provisions," which in this case would be $1,000,000. The Defendant argues that the phrase is both the rejection of the coverage that must be "in limits at least equal to the limits of liability specified in the bodily injury liability provisions," and the qualifier that sets the UIM limit for the amount of $50,000.

As the disagreement between parties illustrates, the phrase is ambiguous as to which minimum coverage amount in the statute is being referenced. However, when the insurance contract is read "as a whole and all writings forming part of the same transaction are interpreted together," Restatement (Second) of Contracts § 202, the Plaintiff's interpretation is the only one that makes sense. Column I in the Declaration Page states that the uninsured motorist coverage is for $1,000,000 per person, per accident. This number is consistent with construing the Endorsement's phrase "and only to minimum coverage limits required by the state law" to mean

10

the coverage that at least equals the bodily injury liability provision, *see* § 27-7-5-2(a)(2), which in this case would be $1,000,000.

The Defendant's interpretation would pit the $1,000,000 amount in Column I against the $50,000 amount in the Endorsement. As noted above, such result is not preferred in contract construction. *See* Restatement (Second) of Contracts § 202*; see also* Restatement (Second) of Contracts § 203 ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."). The Defendant argues the two numbers are consistent. According to the Defendant, Column I represents an amount of coverage the insurer offered to the insured, which was then rejected by the insured in the Endorsement:

> Here, Progressive took out an insurance policy on behalf of its employees under particular circumstances. Progressive, as an insurance company, clearly offered UIM limits under this policy in an amount equal to the bodily injury limits of liability of $1,000,000 as evidenced on the declarations page. Despite this offer, Progressive decided to reduce the UIM liability to the minimum coverage limits under state law and specifically stated this on its General Change Endorsement.

(Def. Br. Mot. S.J. at 11; DE 12.) In addition, the Defendant insists that the Declaration Page is only intended to provide a summary of coverage and cannot provide a complete picture of coverage, as a detailed description would only create confusion. The Defendant relies for its arguments on *Allstate Ins. Co. v. Keca*, 368 F.3d 793 (7th Cir. 2004).

The Defendant's contentions are flawed for two reasons. First, without any citations to authority, the Defendant overlooks the fact that the Declaration Page is not an offer but a part of a contract that must be construed in its entirety. The Declaration Page explicitly provides, not merely offers, that each person is covered for $1,000,000 against uninsured motorists.

Second, the Defendant's reliance on *Keca* is misplaced. In that case, the insurer

11

maintained that the maximum amount of the UIM coverage listed on the declaration page was made ambiguous by the UIM reducing clause that appeared in the endorsement. The Court of Appeals found no inconsistency between the declaration page and the reducing clause because "[a] reasonable insured reading these provisions would understand that the insured purchased a fixed level of UIM recovery which will be arrived at by combining payments made from all sources." *Id.* at 799. That is, the insured would have known that he purchased a certain amount of UIM protection but which could be offset by payments from outside sources. *Id.* Hence, the Court found no ambiguity.

In the case at hand, however, if the Court were to interpret the Endorsement as setting the UIM coverage amount for $50,000, that would be the maximum UIM insurance amount. The contract then would contain two maximums, one in Column I in the amount of $1,000,000 and one in the Endorsement in the amount of $50,000.  As there can be only one maximum, the two provisions would plainly contradict. Under these circumstances, the Court would have to adopt the provision most favorable to the insured, *see Great Lakes Chem. Corp. v Int'l Surplus Lines Ins. Co.*, 638 N.E.2d 847, 852 (Ind. Ct. App. 1994) ("Where a policy contains inconsistent and contradictory provisions, that provision most favorable to the insured will be adopted."); *see also Matteson*, 844 N.E.2d at 192, and find that the Plaintiff was covered against uninsured motorists up to $1,000,000. Therefore, even if the Endorsement were to be construed to set the UIM coverage at $50,000, the outcome of the case would be the same.

**(3)    *The Reducing Clause***

Although the Plaintiff was insured up to $1,000,000, other payments she received offset

12

the Defendant's liability limits. So far, the Plaintiff had been compensated $250,096.21 for her damages resulting from the collision: $50,00 by the other driver's liability insurance policy; $50,000 by her own insurance policy's UIM provision; $5,000 by her own insurance policy for medical payments; and $145,096.21 by worker's compensation carrier. With the exception of the $50,000 payment from the Plaintiff's own UIM policy, the parties agree that these payments offset the Defendant's obligation. The Defendant submits that the $50,000 must also be used to offset its liability. The Plaintiff asserts that her own insurance payments cannot be used to offset the Defendant's liability but can be considered in calculating the Defendant's share of total liability.

The Court agrees with the Plaintiff. The Defendant's policy addresses the situation when the insured is also covered by other UIM policies: "If there is other applicable uninsured or underinsured motorist coverage, we will pay only our share of the damages. Our share is the proportion that our limit of liability bears to the total of all available coverage limits." ( DE 12-4; Insurance Policy at 9.). Under this provision, the Defendant is not entitled to a dollar for dollar credit for the $50,000 the Plaintiff obtained from her own insurance carrier. Instead, it must pay its "share of the damages," which in this case is 91% (the Defendant's $1,000,000 limit divided by the total available UIM coverage limits of $1,100,000).

Accordingly, since the Plaintiff had already received $200,096.26 from other sources, not including her own insurance carrier's UIM payment, the Defendant's maximum exposure is $727,912, the 91% of the difference between those payments and its maximum $1,000,000 limit ($1,000,000 - $200,096.26) x 91%).

**F.      Conclusion**

In light of its findings that the Plaintiff was covered by the Defendant's insurance policy at the time of her automobile accident and that the coverage was up to $1,000,000, the Court denies the Defendant's Motion for Summary Judgment [DE 11] and grants the Plaintiff's Motion for Partial Summary Judgment [DE 17].

The Court SETS a telephone scheduling conference for Monday, May 14, 2007 at 1:30 PM before Judge Theresa L. Springmann. The Court will initiate the call.

SO ORDERED on May 7, 2007.

    S/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT